Elarion **KLISHEWICH,** Plaintiff,

v.

**MEDITERRANEAN AGENCIES, INC.,** and **J. Andreson,** Defendants.

**No. 65-C-1249.**

United States District Court
E. D. New York.

Dec. 1, 1966.

William R. Johnson, Brooklyn, N. Y., for plaintiff.

Haight, Gardner, Poor & Havens, New York City, N. Y., for defendant, J. Andreson.

ROSLING, District Judge.

Motion by defendant Andreson for an order pursuant to Fed.R.Civ.P. setting aside service of the summons upon defendant Andreson, a foreign corporation, is granted.

The action is brought to recover for personal injuries allegedly sustained by plaintiff on July 10, 1963 while employed aboard the M/S Baymaster as a ship repairman.

Andreson is described in the amended complaint as owner of the vessel. The complaint's confused allegations respecting the first named defendant, Mediterranean Agencies, Inc. (Mediterranean) [1] pieced out by the qualified admission in the answer of the Mediterranean [2] and the general tenor of the affidavits and exhibits submitted by the opposing parties on the motion sub jud. establish the relationship of the defendants inter se as that of owner (Andreson) and time charterer (Mediterranean) of the Baymaster.

Jurisdiction was grounded in the complaint on diversity of citizenship of the parties with a qualifying ad damnum.[3] In diversity cases "personal jurisdiction is to be determined by the federal courts in accordance with state law." Birtcher Corp. v. Diapulse Corp. of America, 87 S.Ct. 6, 7–8, 17 L.Ed.2d 43 (1966), denying stay of mandate of Court of Appeals, Second Circuit, 362 F. 2d 736, pending certiorari, both appellate courts having cited Arrowsmith v. United Press International, 320 F.2d 219, 6 A.L.R.3d 1072 (2d Cir. 1963). The burden, moreover, rests upon the plaintiff to sustain the elements upon which rests the validity of the service he has effected. Kelly v. Three Bays Corp., 173 F.Supp. 835 (S.D.N.Y.1959), aff'd on opinion below, 276 F.2d 958 (2d Cir. 1960); Fergus Motors v. Standard-Triumph Motor

---

1. Paragraph Fourth of the complaint alleges that the Mediterranean "was the General Agent of the defendant, duly authorized to act on its behalf in the State of New York." Whether the agency claimed was one in behalf of Andreson, is not clear. At all events Mediterranean in its answer denied such agency, and it does not appear that in subsequent proceedings, including its opposition to the present motion, plaintiff has sought to sustain the existence of such agency.

2. Mediterranean's answer (paragraph Fifth) in pertinent part reads as follows: "That on or about the 30th day of January, 1963, defendant Mediterranean Agencies, Inc., entered into a time charter with the owner of M/S Baymaster, * * *."
   Mediterranean had earlier expressly admitted in its answer the fifth allegation of the amended complaint which averred that defendant Andreson was the owner of the vessel.

3. The jurisdictionally essential diversity is ambiguously stated. Whether Mediterranean is a foreign corporation with its principal place of business outside the State of New York (see 28 U.S.C. § 1332 (c)) is not specifically declared. See also Fed.R.Civ.P. 8(a) for requirement that the complaint set forth "a short and plain statement of the grounds upon which the court's jurisdiction depends". If complete diversity is lacking as between plaintiff on the one hand and both defendants on the other, the jurisdictional defect may not be waived by the parties (American Fire & Casualty Co. v. Finn, 341 U.S. 6, 17, 18, 71 S.Ct. 534, 542, 95 L.Ed. 702 (1951); People's Bank of Belleville v. Winslow, 102 U.S. 256, 26 L.Ed. 101 (1880)) and the action is subject to dismissal at any stage either on motion of the parties or by the court ex proprio motu, (Caffery v. New York Central R. R. Co., 324 F.2d 711 (2d Cir. 1963); Gorham v. Edwards, 160 F.Supp. 928, 931 (S.D.N.Y.1958), unless the nondiverse party defendant whose presence infects the whole suit is dropped upon appropriate application. (Kerr v. Compagnie De Ultramar, 250 F.2d 860 (2d Cir. 1958); Wells v. Universal Pictures Co., 166 F.2d 690 (2d Cir. 1948)).

Co., 130 F.Supp. 780 (S.D.N.Y.1955); Mitchell v. The M. V. Wanderer, 127 F. Supp. 540, 541 (S.D.N.Y.1954); Amtorg Trading Corp. v. Standard Oil Co. of Cal., 47 F.Supp. 466 (S.D.N.Y.1942); Hurley v. Wells-Newton National Corp., 49 F.2d 914, 917 (D.Conn.1931).

Plaintiff maintains he has validly subjected the Andreson corporation to the jurisdiction of this court by personally serving the summons on the Peraco Chartering Corp. on March 17, 1966 within the City of New York. The affidavit of the attorney for the plaintiff in opposition to the motion to vacate describes Peraco "as the agent for defendant, J. Andreson." C.P.L.R. § 311 provides in pertinent part that "[p]ersonal service upon a corporation * * * shall be made by delivering the summons as follows:

1. upon any * * * foreign corporation, to * * * [a] managing or general agent * * *."

Fed.R.Civ.P. 4(d) (3) is substantially to the same effect, permitting service "[u]pon a * * * foreign corporation * * * by delivering a copy of the summons and of the complaint to * * * a managing or general agent * * *."

The definition of an agent within the intent of both federal and New York State provisions need not long detain us, for it is clear that plaintiff makes no showing whatsoever sufficient to overcome Andreson's specific denial of agency and the effect of what said defendant affirmatively alleges in that regard. In Diamond v. New York, S. & W. R. Co., 18 F.Supp. 605, 606 (E.D.N.Y. 1937), the opinion of the court declares pertinently:

"The meaning of the term 'managing agent' has been construed in New York cases and it is generally held that he is one who must be shown to have been invested with some general powers in-

volving the exercise of independent judgment and discretion. Appleby v. Insurance Office of Australia, 119 Misc. 378, 196 N.Y.S. 575; Holzer v. Dodge Bros., 233 N.Y. 216, 135 N.E. 268. See, also, Lauricella et al. v. Evening News Publishing Co. (D.C.) 15 F.Supp. 671; Goetz v. Interlake S. S. Co. (D.C.) 47 F.(2d) 753."

In Callan v. Lillybelle, Ltd., 20 A.D.2d 877, 878, 248 N.Y.S.2d 530 (1st Dept. 1964), appeal dismissed 16 N.Y.2d 1074, 266 N.Y.S.2d 393, 213 N.E.2d 687, the Appellate Division in vacating service said, referring to the putative agent and finding no agency established:

"He had neither the responsibilities nor the authority of such a status, nor did his duties encompass the requisite elements of discretion and judgment (see, Holzer v. Dodge Brothers, 233 N.Y. 216, 135 N.E. 268; Barrett v. American Telephone & Telegraph Co., 138 N.Y. 491, 34 N.E. 289; Taylor v. Granite State Provident Association, 136 N.Y. 343, 32 N.E. 992; Baker v. New York Central Railroad Company, 258 App.Div. 854, 16 N.Y.S.2d 78)."

See also Cohen v. Newsweek, Inc., 312 F.2d 76 (8th Cir. 1963); Metropolitan Theatre Co. v. Warner Brothers Pictures, 16 F.R.D. 391 (S.D.N.Y.1954).

All that is here established by plaintiff, and that not too clearly, is that Peraco on January 30, 1963, more than three years before the purported service upon it in Andreson's behalf of the process here challenged, acted as subbrokers under authority received from R. S. Platou A/S of Oslo, Norway, the latter being described as Brokers, in executing on that day the time charter of the Baymaster. The descriptio personae identified Peraco as "also Brokers for Owners only" and declared that such execution was "for A/S Golden West (as Manag-

ing Owners of M/S "Bay Master")." [4] The relationship between J. Andreson and the Golden West corporation is left in speculative uncertainty.

The affidavit of Per A. Arneberg submitted in support of the motion alleges that he is President of Peraco and that the business of his company is that of "ship chartering broker"; further, that it "acted in that capacity on only one occasion involving the m/s Bay Master or her owner and that was a fixture which was a fixture which was concluded on January 31, 1963. On that occasion, the services of Peraco Chartering Corporation was actually engaged not by the vessel owner, directly, but by R. S. Platou A/S, chartering brokers of Oslo, Norway."

The business of ship brokerage is well recognized and carries with it no implication of agency such as plaintiff here ascribes to it,[5] least of all an agency that may be held without underlying proof to have continued after the isolated transaction of negotating and closing the charter "fixture" for more than three years until the date of alleged service upon the "agent".[6] Plaintiff may not by mere assertion expand the relationship between Andreson and Peraco, narrowly limited in time and scope, into one of agency such as that with which a ship's husband or manager is invested.

Settle order on notice.

4. The complete subscription to the charter party reads:
"For A/S GOLDEN WEST, (as Managing Owners of M/S 'Bay Master') by telex authority from R. S. Platou A/S, Oslo, (Brokers) dated February 12th, 1963,
for PERACO CHARTERING CORPORATION, (also Brokers for Owners only).
Per A. Arneberg."
The other contracting party executed the document in the following form:

"ZIM ISRAELI LINES, MEDITERRANEAN AGENCIES, INC., BY AUTHORITY
M. Chovers, Vice President."

5. Cf. Belgian Mission for Economic Cooperation v. Zarati Steamship Co., Ltd., 90 F.Supp. 741, 742 (S.D.N.Y.1950).

6. Belgian Mission for Economic Cooperation v. Zarati Steamship Co., Ltd., supra. Miller v. The Sultana, 79 F.Supp. 877 (W.D.N.Y.1948); Granite Chemical Corp. v. Northeast Coal & Dock Corp., 249 F.Supp. 597 (D.Maine, S.D.1966).